**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

JMK

4/19/2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| BLUDGEON RIFFOLA LTD., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-02525 |
| | ) | |
| v. | ) | |
| | ) | Judge Gary Feinerman |
| ALI GEGE STORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*AMICUS CURIAE* **BRIEF REGARDING PLAINTIFF'S MOTION TO DISREGARD**
**DEFENDANT'S PURPORTED PRO SE STATUS AND STRIKE DEFENDANT'S**
**REPLY [88]**

Non-party Lei Shufen ("Amicus") respectfully submits this brief as *amicus curiae*

regarding Plaintiff's motion to disregard Defendant's purported *pro se* status and strike

Defendant's reply [88] (the "Motion") and states as follows:

This case is one of a burgeoning number of cases being filed in this District that all

follow a nearly uniform pattern. Plaintiffs, purporting to own certain intellectual property, sue

large groups[1] of foreign defendants for infringement. Plaintiffs institute these cases *ex parte*,

seeking first a restraint on defendants' internet stores and accounts and then a preliminary

injunction. On the expectation that the majority of defendants—all foreign businesses—may not

realize immediately that they have been sued in this District and **may be unfamiliar** with the

American legal system—these plaintiffs finally move for default judgment, hoping that most of

these foreign defendants will simply settle or take the default. *See, Oakley, Inc. v. The*

*Partnerships and Unincorporated Associations Identified on Schedule "A,"* Case No. 20-cv-

06676, in which no defendant appeared to contest the entry of default judgment and Final

Judgment was entered on February 4, 2021. Most of the time, plaintiffs in these cases do not

---

[1] Although these types of cases follow a nearly uniform procedural pattern, they do differ in terms of the numbers of defendants plaintiffs join in a single case, ranging from 79 defendants in a case before Judge Chang, *Estee Lauder Cosmetics Ltd. v. P'ships & Unincorporated Assocs. Identified on Schedule A,* 334 F.R.D. 182 (N.D. Ill. 2020), to 3,343 defendants in a case before Judge Blakely, *Am. Bridal & Prom Indus. Ass'n v. The P'ships & Unincorporated Ass'ns Identified on Schedule A,* 192 F. Supp. 3d 924, 932 (N.D. Ill. 2016).

conduct sufficient prefiling investigation—if at all—to establish personal jurisdiction over defendants in this District. Therefore, any orders obtained by these plaintiffs are void *ab initio.*

Amicus respectfully submit that disregarding Defendant's *pro se* status in this case would seriously undermine 28 U.S.C. § 1654.

As stated in 28 U.S.C. 1654:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct cases therein.

The foundational flaw undergirding the arguments made in **Part I** of Plaintiff's Motion is the assumption that because a Defendant resides in a foreign country like China, it must be impossible to learn how to conduct legal research, read and analyze opinions issued by district courts, and to incorporate that research into their pleadings. Thus, leading Plaintiff to conclude that if a non-resident *pro se* defendant is able to cite caselaw to support their well-founded arguments, then that defendant is an individual who is not licensed to practice in this District. However, Plaintiff's assumption here has no basis in law or fact. Going by Plaintiff's inane logic, non-resident *pro se* defendants must be illiterate individuals or persons of low understanding at best, who are incapable of making proper filings because only U.S. counsel would know citation to authority—this cannot be true.

In 2022, when U.S. Courts motions, orders, opinions, judgements and other similar information is easily accessible on the internet via Pacer.com or even Docketbird.com, there is nothing stopping a *pro se* party from learning how to conduct legal research, read and analyze opinions issued by district courts, and to incorporate that research into their pleadings. Therefore, where, as here, a *pro se* Defendant has submitted arguments with appropriate caselaw citations, they deserve to be heard as per 28 U.S.C. § 1654. Striking the pleadings of a *pro se* Defendant who makes effort to effectively represent themselves through submission of well-argued briefs is extremely unfair. Especially, in the absence of clear and convincing

evidence to support the argument in **Part I** of Plaintiff's Motion. As evidenced by Plaintiff's Motion [89], indeed this is the latest tactic by plaintiffs in these cases to force settlement upon defendants in these cases and to deny defendants a chance to be heard even where defendants have a valid defense. It is in the interest of justice that the Court should reject the argument made in **Part I** of Plaintiff's Motion.

To grant Plaintiff's Motion is to say without any basis, that the non-resident *pro se* Defendant must be a person of extremely low aptitude (as per Plaintiff's estimation), incapable of submitting well-argued filings *pro se,* otherwise, the filings were drafted and/or filed by individuals with legal training that are not licensed to practice in this District. Granting Plaintiff's Motion is not only extremely prejudicial to *pro se* parties in this District but also undermines 28 U.S.C. § 1654.

DATED this 19th day of April, 2022.

/s/ *Lei Shufen*
*Amazon Seller*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of April 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the parties.

/s/ *Lei Shufen*
*Amazon Seller*

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

XYZ Corporation

    Plaintiff,

                                 Civil Action No.: 20-cv- 5338

v.

SCHEDULE "A"

    Defendant.

FILED SXB
12/25/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## Memorandum in support of its motion to dismiss

The defendant found that the amount could not be transferred out when using the Amazon account to withdraw money. According to lawyer's suggestion, the defendant found the notice from Amazon in the past miscellaneous e-mails, saying that the defendant was involved in the injunction. The defendant held that the plaintiff's claim should not be supported. The specific reasons are as follows:

### 1.Lack of necessity of electronic delivery

The plaintiff's argument in page 2 of the amended complaint that " Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation" is unreliable, The defendant never concealed his identity to intentionally infringe others' intellectual property. In addition, The plaintiff served legal documents on the defendant by e-mail on the ground that he could not find the address or contact information of the defendant. These claims lack of factual basis. According to Amazon rules, if a seller wants to operate a store in Amazon, he must register the real company or operator information when applying for the store. These information can be found in Amazon store. The defendant believes that the plaintiff has not used reasonable means of examination. In fact, the plaintiff can enter the defendant's store without any difficulty and find the seller's real identity information, including the corresponding company name or operator name and address.

### 2.The service procedure is illegal

Article 1 of the Hague Convention states at the beginning that this Contracting State shall serve legal documents in accordance with the provisions of this Convention. This is a mandatory provision for all Contracting States, and the United States, as a member of the Contracting States, should also comply with the Convention.

Defendant looked up all the contents of the Hague Convention and did not see which specific clause gave the plaintiff the right of electronic service.

According to Article 5 of the Hague Convention, service of documents shall be carried out in accordance with the domestic provisions of the country to which the document is to be served, or on the premise of not violating the law of the country to which it is sent, it shall be delivered by the method voluntarily accepted by the addressee. This clause is an enabling rule, which authorizes the member states of the Convention to refuse to recognize the mode of service other than that stipulated in the Hague Convention

According to Articles 8 and 9 of the Hague Convention, the plaintiff can serve legal documents directly

or indirectly to the defendant through the consulate. However, the plaintiff did not serve in this way.

Case 1:21-cv-05255-JPB Document 95 Filed 04/25/22 Page 6 of 26 PageID #:2453

According to Article 10 of the Hague Convention, if the destination country does not object, the server can serve the legal document directly to the country to be served by mail, or to the judicial assistants, officials or other competent personnel of the country to be served. This clause is also an enabling rule.

According to the above provisions, we can see that the Hague Convention does not take electronic service as an effective means of service, nor does it prohibit electronic service. Although the defendant may claim that the plaintiff's service can be implemented according to Article 4 (f) (3) of the federal procedural law, namely "by other means not prohibited by international agreement", after all, as mentioned above, the Hague Convention does not prohibit the use of electronic service. However, Article 5 and Article 10 of the Hague Convention authorize Member States to decide whether to prohibit electronic service and other modes of service not specified in the Hague Convention. Further, article 277 of the Civil Procedure Law of the people's Republic of China has clearly stipulated that except for the mode of service stipulated in the Hague Convention, other modes of service shall be approved by the competent authorities of China.

According to Article 277 of China's civil procedure law, "the request for and provision of judicial assistance shall be made through the channels specified in the international treaties concluded or acceded to by the people's Republic of China; if there is no treaty relationship, it shall be made through diplomatic channels... Except for the circumstances mentioned in the preceding paragraph, no foreign organ or individual shall be allowed to seek judicial assistance in China without the permission of the competent authorities of the people's Republic of China Service of documents, investigation and collection of evidence within the territory of the people's Republic of China. " In this case, the plaintiff's electronic service has not been approved by the competent authorities of China, and China has not signed an agreement with the United States, which specifically stipulates that documents can be served by e-mail.

If any American plaintiff can serve legal documents to foreigners by electronic service, then the Hague Convention will not exist. The plaintiff can apply the American law to all defendants who do not live in the United States, and regardless of the legal rules of the country where the defendant is located. This is undoubtedly an act of disrespect for the judicial sovereignty of other countries, which also violates the due process stipulated in14th Amendment of the united states constitution. In essence, it also violates the authorization rule of Article 5 and Article 10 of the Hague Convention. Therefore, the plaintiff's service should not be regarded as effective.

## 3.Unreasonable means of injunction

On Amazon platform, once the restriction order is implemented, the transfer out function of the defendant's account will be restricted, that is, before the defendant solves the dispute with the plaintiff, all the amounts in the account will be frozen, and the frozen amount is often far more than the losses suffered by the defendant.

If the defendant continues to operate the Amazon store, the frozen amount in the account will continue to increase, which makes the defendant have to suspend the operation of the store before settling the dispute with the plaintiff, which has a serious impact on the subsequent legitimate operation of the plaintiff. The plaintiff can take the advantage of this injunction to unjustly ask the defendant to bear much more compensation than the plaintiff's loss. For example, the defendant's frozen amount is $6000, the defendant's suspected infringement product sales volume was zero, and only temporarily listed related products, while the plaintiff unreasonably asked defendant to bear $5000 of compensation in the negotiation, otherwise the plaintiff will move a default judgment and further enforce all property in the defendant's account.

The plaintiff obtained data from Amazon platform to know the amount of the defendant's account, and based on this, to make a claim for compensation, which did not claim compensation according to the

plaintiff's actual damage. Because the defendant who is in a weak position in the litigation does not understand the laws of the United States, and does not have enough financial resources to pay high attorney fees to respond to the lawsuit, objectively, he cannot also go to the United States to appear in court as a pro se litigant. As a result, the defendant has to agree to the plaintiff's unreasonable demand in order to reach an out of court settlement. The number of defendants who actually appear in court is a drop in the bucket.

Plaintiffs' lawyers have experienced the ease of obtaining benefits quickly in this way, and more and more American lawyers are flocking to attack Chinese sellers. At present, in Illinois, thousands of Chinese sellers are listed as defendants every day, and huge amounts of property are taken away. In each case, the amount of property taken away is as high as millions or even tens of millions of dollars, which happens every day in Illinois. The main reason for this phenomenon is that the standard of restraint order is too low, the restraint means are too strict, and the extent to which the defendant is punished by the restraint order is far greater than the compensation that the defendant should bear.

It even induces more and more intellectual property owners to abuse litigation as the main means of making profits.

## 4. Defects in Jurisdiction

The evidence provided by the plaintiff is insufficient to prove that the state of Illinois has jurisdiction over the case.

The defendant contacted the plaintiff on October 8 for evidence. It was not until October 21 that the plaintiff replied to the defendant and provided the evidence screenshot.

According to the evidence provided by the plaintiff, the screenshot indicates that the shipping address is "1033 SOUTH BLVD OKA PARK,IL United States". However, the defendant searched the sales records of related products, and found no products were sold to Illinois, and the defendant's sales of related products were zero. The defendant believes that plaintiff just filled in the address information in the shipping address column, but did not actually place an order. Defendant firmly believes that before clicking the "plan your order" button, the plaintiff could not verify and prove whether the relevant products could be sold or offered to be sold to Illinois.

## 5. Damage to public interest

The plaintiff's abuse of litigation rights not only seriously damages the interests of most legitimate sellers in China, but also damages the interests of residents living in Illinois. Many Chinese sellers are considering abandoning the Illinois market because they fear that their inadvertent business behavior will lead to lawsuits. As a result, many local residents will not be able to enjoy the benefits of the competition between a variety of commodities.

## 6.Conclusion

The defendant hereby requests the court to dismiss the plaintiff's claim and release the injunction order, so as to safeguard the legitimate rights of the defendant in the proceedings.

Case: 1:21-cv-05235 Document #: 36 Filed: 02/25/22 Page 7 of 26 PageID #:2744

DATED:  December 25, 2020                    Respectfully submitted,

_____/s/ **Guo Fei**_____

*1110, 309 Guang yi Road, Liang xi District,*

*Wuxi City, Jiangsu Province, China*

_____18702603811@163.com_____

_____18810053557_____

**pro se litigant**

**SCHEDULE "A"**

| Store Name | Seller Origin | Operator |
|---|---|---|
| Yoyoly | A58IDMK0ARQAD | Guo Fei |

IN THE UNITED STATES DISTRICT COURT
## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

2/1/2021

**MO**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

XYZ Corporation

    Plaintiff,

v.

    Yoyoly

    Defendant.

Civil Action No.: 20-cv- 5338

# Answer to plaintiff's response

### 1.The plaintiff lacks necessary preconditions when applying fed. R.Civ. P.4 (f) (3).

Fed. R.Civ. P.4 (f) (3) is located in the third paragraph of fed. R.Civ. P.4 (f), which is a comprehensive clause, that is, only when the first two clauses can not be applied can fed. R.Civ. P.4 (f) (3) be applied. If any plaintiff can directly apply the third paragraph across them instead of applying the first two clauses as a prerequisite, then the first two clauses will not exist. This is not in line with the legislative purpose of legislators. Fed. R.Civ. P.4 (f) (3) is a supplementary clause, which is formulated to solve the plaintiff's difficulties in service of documents, and to ensure that the plaintiff can obtain sufficient relief. However, if the U.S. procedural law authorizes the plaintiff to use fed. R.Civ. P.4 (f) (3) arbitrarily without any restrictions, it will damage the procedural rights and interests of the defendant. When the plaintiff did not exhaust the possibility of fed. R.Civ. P.4 (f) (1) and fed. R.Civ. P.4 (f) (2), it was against due process of law.

### 2.The address of the defendant is easy to know.

The plaintiff's argument in the response that " The Hague Convention Does Not Apply Because Defendants' Addresses Were Unknown. " is unreliable, According to Amazon rules, if a seller wants to operate a store in Amazon, he must register the real company or

Case: 1:24-cv-03513 Document #: 23 Filed: 07/02/24 Page 2 of 8 PageID #:1768

operator information when applying for the store. These information can be found in Amazon store. The defendant believes that the plaintiff has not used reasonable means of examination. In fact, the plaintiff can enter the defendant's store without any difficulty and find the seller's real identity information, including the corresponding company name or operator name and address. The defendant company is legally registered in China ( **EXHIBIT 1** )

### 3 Defects in Jurisdiction

According to the evidence provided by the plaintiff, the screenshot indicates that the shipping address is Illinois. However, the defendant searched the sales records of related products, and found no products were sold to Illinois, and the defendant's sales of related products were zero. The defendant firmly believes that plaintiff just filled in the address information in the shipping address column, but did not actually place an order. The plaintiff's way of obtaining evidence by taking screenshots is very absurd. Especially in Illinois, many sellers have given up taking Illinois as one of the sales markets because they are worried that they will be involved in lawsuits due to their inadvertent behavior. Defendant believes that before clicking the "plan your order" button, the plaintiff could not verify and prove whether the involved products could be sold or offered to be sold to Illinois. Further, if someone has clicked the "plan your order", the seller may not actually ship the goods to Illinois, the plaintiff should place an order and actually be able to determine the jurisdiction after receiving the goods.

Besides, Yoyoly is not registered to do business in Illinois. Yoyoly has no regular and established place of business in Illinois. Yoyoly does not maintain any offices, employees, or telephone listings in Illinois. Yoyoly has no manufacturing facility or distribution facility in Illinois. Yoyoly does not pay taxes or maintain any bank accounts in Illinois. Yoyoly does not participate in any business meetings, seminars, trade shows, or other marketing related activities in Illinois.

Yoyo does not have any employees who visit Illinois for business purposes.

Case: 1:21-cv-02305 Document #: 44 Filed: 08/30/21 Page 12 of 26 PageID #:1319

**4.The plaintiff's claim for compensation far exceeds the amount that the defendant may bear.**

For damages, it should be estimated based on the principle of equity（15 U.S.C. §1117(a)).

When calculating the amount of compensation for trademark infringement, we should consider the following factors: the defendant's profit, the plaintiff's loss of income, whether the defendant's behavior is intentional or innocent，whether the defendant cooperate in providing relevant records...（see Polo Ralph Lauren,L.p.v.3M Trading Co.,1999 U.S.Dist.LEXIS 7913(S.D.N.Y.1999)）。

In the Estate of Ellington V. Harbrew Imps. Ltd case, the profits obtained by the infringer and the profits lost by the right holder due to the infringement were all included in the court's consideration.（see 812 F.Supp.2d 161(S.N.D.Y.2011）. In the Sara Lee Corp.v. Bags of New Your, Inc. case, the judge pointed out that "the profits from the infringement and the plaintiff's losses are usually the starting point for the determination of statutory damages"（ see 36 F.Supp.2d 161(S.N.D.Y.,Jan 28,1999）(NO.97 CIV.0085CBM). In our case, the defendant searched all relevant product sales records and found that the sales volume was 0, that is, the defendant's profit was zero.

On the subjective side, the defendant did not intentionally infringe, and stopped offering the product for sale immediately when the defendant knew that the product might infringe

In the RSO Records, Inc.v. Peri case, the court stated that "there is no doubt that the estimated statutory compensation should have some relationship with the actual loss"（see RSO Records,Inc.v.Peri, 596 F.Supp.849,225 U.S.P.Q.407(S.N.D.Y.1984）). In our case, if the

plaintiff asked the defendant to bear such a huge amount of compensation, the plaintiff should provide further evidence to prove his loss, but the plaintiff did not provide evidence. Correspondingly, the defendant's evidence can prove that all the amounts in the defendant's account have nothing to do with rubik trademark, so plaintiff should not require to enforce the freezing amount in the defendant's account（see WMS Gaming, Inc. v. WPC Prods. Ltd., 542 F.3d 601, 608 (7th Cir. Ill. 2008) ("The burden was therefore on PartyGaming to show that certain portions of its revenues…were not obtained through its infringement of WMS's marks."）

High losses and profits from infringement can be used as reasons for high statutory compensation. Conversely, if there is no evidence of actual damage, substantial gains of the infringer, and malicious intent, the court will usually award the minimum amount of statutory compensation （see Mark A. Glick, Lara A. Reymann, Richard Hoffman, Intellectual Property Damages Guidelines and Analysis. Published by John Wiley＆ Sons, Inc., Hoboken, New Jersey, at 325.）. In our case, the plaintiff did not provide us with evidence to prove its loss, so the high amount of compensation demanded by the plaintiff could not be supported.

### 5.Conclusion

The defendant hereby respectfully request the court to dismiss plaintiff's complaint, Alternatively, if the court consider it unnecessary to dismiss plaintiff's complaint, the defendant hereby respectfully request the court to withdraw the injunction order and/or enter an judgement

DATED: February 1, 2021        Respectfully submitted,

_____*/s/Guo Fei*_____

_18702603811@163.com_

**pro se litigant**

# Exhibit 1

Although the Amazon store is virtual, the operator operating the store is the entity enterprise. The plaintiff can find the real entity without any difficulty and take it as the defendant. The address of the company actually exists in China, the plaintiff should serve legal documents to the defendant at this real address. Here's how to easily find the company's subject information(**for example**):

## Step 1. Enter the store name in the search bar of Amazon home page and click search



Step2. Select the color and size, and click the store name in the right border to enter the seller's store information page.



Step3. You can see the red box contains the company name and address information



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUBIK'S BRAND, LTD., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 20-cv-5338 |
| | ) | |
| THE PARTNERSHIPS AND | ) | Judge John J. Tharp, Jr. |
| UNINCORPORATED | ) | |
| ASSOCIATIONS IDENTIFIED ON | ) | |
| SCHEDULE A, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

"Once only seen in flea markets and sidewalk stalls, counterfeit products are now prevalent in the virtual world."[1] With the rise of online counterfeit products, cases aiming to stem their tide have become prevalent in this district. Seeking to abate online sales of counterfeit Rubik's products, Plaintiff Rubik's Brand, Ltd. ("Rubik's") sued 676 online sellers for trademark infringement under the Lanham Act and the Illinois Deceptive Trade Practices Act. Following this Court's issuance of a preliminary injunction, one of the defendants, known by the seller alias "Yoyoly," has moved to dismiss this claim for lack of personal jurisdiction, improper service of process, damage to the public interest, and improper restraint on account. Finding the issue of personal jurisdiction dispositive, Yoyoly's motion to dismiss is granted.

---

[1] *About Online Counterfeiting*, Int'l Anti-Counterfeiting Coalition (last visited Feb. 25, 2021), www.iacc.org/online-initiatives/about.

## BACKGROUND[2]

Online counterfeiting cases in this district typically follow the same life cycle: plaintiffs file an *ex parte* temporary restraining order, seeking expedited discovery on the defendants' identities as well as a freeze on their online marketplace platforms and corresponding funds. After the court grants the temporary restraining order and, usually, an extension for another 14-day period, plaintiffs move for a preliminary injunction, and finally, a default judgment. Along the way, some original defendants are voluntarily dismissed (presumably on the basis of settlements), new defendants may be added, and a default judgment is ultimately entered as to defendants who have not been dismissed from the case. Because the vast majority, if not all, of the defendants are located abroad, the initial proceedings are *ex parte*, and service by electronic means is usually permitted, it is rare for defendants to appear and contest the claims asserted in these cases.

This is one of those rare cases. Rubik's filed this case on September 10, 2020, alleging that hundreds of defendants, Yoyoly among them, were selling unauthorized, counterfeit Rubik's products on their online marketplace platforms. ECF No. 1. This Court granted Rubik's initial motion for leave to file the initial pleadings and related documents under seal, which was requested to prevent Defendants from prematurely destroying relevant evidence and transferring assets prior to the entry of the temporary restraining order. ECF No. 9. On September 21, 2020, this Court granted Rubik's *ex parte* motion for a temporary restraining order, allowing for expedited discovery, disabling the marketplace accounts, and freezing funds connected to those accounts. ECF No. 17. The Court concurrently granted Rubik's motion for electronic service of process. *Id.* After extending the temporary restraining order, the Court unsealed the pleadings and granted

---

[2] For the purposes of this motion, the court accepts all of the plaintiffs' factual allegations as true and draws all reasonable inferences in their favor.

Rubik's motion for a preliminary injunction. ECF No. 31.[3] Yoyoly now moves to dismiss the claim against it in its entirety.

## DISCUSSION

Yoyoly argues that this Court cannot exercise personal jurisdiction over it and that it should accordingly be dismissed from this action. Plaintiffs are not required to set out facts alleging personal jurisdiction in the complaint. *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). If a defendant moves to dismiss on personal jurisdiction grounds, however, the burden shifts to the plaintiff to demonstrate that personal jurisdiction exists. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When the court relies on written materials in its determination, without an evidentiary hearing, the plaintiff is only required to make a *prima facie* showing of personal jurisdiction. *Id.* at 782.

"In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Because the Lanham Act does not allow for nationwide service of process, the Court looks to Illinois's long-arm statute to determine the reach of personal jurisdiction. Under the Illinois long-arm statute, personal jurisdiction is coextensive with the Illinois Constitution and the Federal Constitution. *Id.* The Seventh Circuit recognizes no meaningful difference between the two, and therefore this Court may exercise personal jurisdiction as long as doing so does not violate federal due process. *Id.* Specifically, the Court must find that it has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

---

[3] Shortly thereafter, the case was reassigned to this Court. ECF No. 40.

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

A plaintiff may choose to establish either general or specific personal jurisdiction over a defendant. General jurisdiction exists only where a defendant is "at home," and Rubik's rightly does not attempt to argue for its application here. By contrast, specific jurisdiction exists where (1) "the defendant . . . purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state"; (2) the plaintiff's injury stemmed from the "defendant's forum-related activities"; and (3) the exercise of personal jurisdiction "comport[s] with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). Notably, the Seventh Circuit has declined to formulate a special jurisdictional test for internet-based cases, like this one. *See Curry v. Rev. Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020).

Here, Yoyoly argues that this Court does not have personal jurisdiction over it because it is a China-based online store and has never sold any products to Illinois residents. Rubik's counters that personal jurisdiction over Yoyoly is proper because Yoyoly was "ready, willing, and able" to ship its products to Illinois, as proven by screenshots of its Amazon order page. The screenshots depict an order—at the stage just before it is entered—to buy Yoyoly's Smart Rubik's Cube. It shows a shipping address in Illinois and reflects that the only remaining step to enter the order is clicking the "Place Your Order" link. Yoyoly disputes the evidentiary value of the screenshot, asserting that it "firmly believes that before clicking the 'plan [sic] your order' button, the plaintiff could not verify and prove whether the relevant products could be sold or offered to be sold to Illinois." Mot. to Dismiss at 3, ECF No. 50. According to Yoyoly, in other words, the screenshot doesn't prove that the order would have been accepted and actually fulfilled.

This is an evidentiary dispute, but not one that requires a hearing to address. Even accepting Rubik's premise that the screenshot shows that an order **could** be placed by an Illinoisan, displaying products online that are shippable to Illinois amounts to nothing more than maintaining an interactive website that is accessible in Illinois. That alone cannot confer personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) ("Having an interactive website . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible."). In *Advanced Tactical*, the Seventh Circuit rejected the proposition that an interactive website available to Indiana customers, even accompanied by two email blasts to a list including Indiana residents and several fulfilled product orders to Indiana residents, sufficed for personal jurisdiction. *Id.* at 801. Even though the defendant's conduct reached a substantial number of Indiana residents, the court still found that its website and email blasts were impermissible bases for jurisdiction because neither evinced that the defendant had purposefully targeted or exploited the Indiana market in some way, as is required to establish minimum contacts. *Id.* at 802-03. Rubik's brief does not cite, much less address, *Advanced Tactical.*

Rubik's relies instead on *Illinois v. Hemi Group*, 622 F.3d 754, 758 (7th Cir. 2010), in fashioning its personal jurisdiction argument, specifically for its language that the defendant seller "stood ready and willing to do business with Illinois residents" through its interactive website. But *Hemi* does not stand for the proposition that maintaining an interactive website on which a forum resident can place an order is sufficient, standing alone, to establish personal jurisdiction over the seller. The *Hemi* court made that point explicitly: "[W]e affirm the district court's conclusion that Hemi is subject to personal jurisdiction in Illinois, not merely because it operated several 'interactive' websites" but because it had sufficient minimum contacts with the state. *Id.*

at 760. The court found that Hemi's sales of 300 packs of cigarettes (a heavily regulated product) to an Illinois resident, combined with its exclusion of New York state from its customer pool (evincing that it made an affirmative choice to sell to other states), justified the exercise of personal jurisdiction in an Illinois court.

*Hemi* is just one in a line of Seventh Circuit cases confirming that the maintenance of an interactive website, without more, is insufficient to vest a court with personal jurisdiction. *See Curry*, 949 F.3d at 400 ("Significant caution is certainly appropriate when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state."); *Advanced Tactical*, 751 F.3d at 802 (declining to exercise personal jurisdiction because defendant seller had not targeted Indiana "beyond simply operating an interactive website accessible in the forum state and sending emails" to potential residents); *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market."); *Mobile Anesthesiologists*, 623 F.3d at 446 (a plaintiff cannot establish personal jurisdiction "simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website").

To be sure, evidence of extensive sales through an interactive website may suffice to show that a defendant has targeted the jurisdiction at issue, as in *Curry*, where the defendant conceded that it had made sales to 767 customers through multiple interactive websites (its own- and third-party sites). 949 F.3d at 399. But a "miniscule" number of transactions won't do. In *be2 LLC*, the Seventh Circuit found evidence that 20 Illinois residents had opened accounts on the defendant's interactive website to be inadequate given the miniscule number of customers and the absence of

evidence of further interaction with them. 642 F.3d at 559. And, particularly apropos here, in *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019), the Seventh Circuit held that personal jurisdiction was lacking where a sale had been made, but it was "a single incident conjured up by the plaintiffs' attorney for the exclusive purpose of establishing jurisdiction over the defendants."

Here, we don't have even that much. Yoyoly has averred that it has made no sales to Illinois residents[4] and the plaintiff has provided no evidence to rebut that claim. The single episode on which Rubik's supports its personal jurisdiction claim documents not a sale but—at most—the possibility that a sale could be made in Illinois, based on a screenshot taken by the plaintiff not for a commercial purpose but "for the exclusive purpose of establishing jurisdiction over the defendants." So far as the information presented to the Court establishes, no Illinois resident has ever purchased any product (much less a Rubik's knock-off) from the Yoyoly website. Indeed, so far as the record shows, no Illinoisan has ever even *viewed* the Yoyoly website with an eye to purchasing a product offered there. That an Illinoisan might someday find Yoyoly's website and decide to purchase a counterfeit Rubik's product from the site simply does not suffice to vest the Court with personal jurisdiction over Yoyoly.

Rubik's argues, however, that displaying an infringing product for sale is a tort and a single tortious act in Illinois empowers this Court to exercise personal jurisdiction over a defendant. But the Seventh Circuit appears to have rejected the proposition that "any plaintiff may hale any defendant into court . . . where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Mobile Anesthesiologists*, 623

---

[4] Reply at 2, ECF No. 63 ("[T]he defendant searched the sales records of related products, and found no products were sold to Illinois, and the defendant's sales of related products were zero.")

F.3d at 445. Rather, "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Id*. As discussed, Rubik's has not made that showing here. And in any event, the cases that Rubik's cites for this proposition all involve some conduct beyond the mere display of an infringing product for sale on a website accessible in Illinois. *See Monster Energy v. Wensheng*, 136 F. Supp. 3d 987, 906 (N.D. Ill. 2015) (personal jurisdiction was proper because, though a counterfeit product was never sold to Illinois, at least three Illinois residents attempted to purchase them and one Illinois resident communicated with defendant regarding payment); *Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, No. 10-CV-4535, 2010 WL 4877708, at *1, 7 (N.D. Ill. Nov. 23, 2010) (finding personal jurisdiction where defendant sold infringing dental products through its website to Illinois consumers, deriving 1.2% of its gross revenue from Illinois); *Store Décor Div. of Jas Int'l, Inc. v. Stylex Worldwide Indus., Ltd.*, 767 F. Supp. 181, 183-84 (N.D. Ill. 1991) (personal jurisdiction was appropriate where defendant sold $400 worth of infringing products in Illinois).

It is true that other district courts have come out differently on this question, in large part because their guiding case law does not require more than the maintenance of an interactive website to establish personal jurisdiction. *See WowWee Group Ltd. v. Meirly*, No. 18-CV-706 (AJN), 2019 WL 1375470, at *4 (S.D.N.Y. Mar. 27, 2019) (finding personal jurisdiction over defendant online merchants because "the case law has stopped short of requiring additional conduct beyond maintaining an interactive website that offers products to consumers"); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 293 F. Supp. 3d 232, 238 (D. Me. 2017), *aff'd*, 905 F.3d 1, 4 (1st Cir. 2018) (personal jurisdiction existed over a German online service provider for operating an interactive website where the First Circuit had not decided a case on the issue). That is not the

situation in the Seventh Circuit, where the case law has been clear that more than an interactive website is needed.

At bottom, Rubik's argument boils down to a contention that because Yoyoly maintains a website that an Illinoisan can access to purchase counterfeit Rubik's products, it has sufficient contacts with Illinois to satisfy due process. But the Seventh Circuit has not extended specific personal jurisdiction quite that far; maintenance of an interactive website, unaccompanied by evidence of any sales or other activity targeting Illinois, does not establish that Yoyoly has sufficient minimum contacts with Illinois to support the exercise of personal jurisdiction.

*       *       *

Accordingly, Yoyoly's motion to dismiss is granted with prejudice and Yoyoly is dismissed from this case.

Date: March 4, 2021

John J. Tharp, Jr.
United States District Judge