IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



FILED
8/25/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JK

| | |
|---|---|
| BLUDGEON RIFFOLA LTD., <br> Plaintiff, <br> v. <br> Womens Dresses -YIISU, <br> Defendant(No.121). | Case No. 21-cv-02525 <br> Honorable Gary Feinerman |

### RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION[123] AND DEFENDANT'S MOTION TO SET SCHEDULE FOR DEFENDANT'S MOTION TO DISMISS[117] AND MOTION TO VACATE PRELIMINARY INJUNCTION[96]

Defendant Womens Dresses -YIISU( "I" or "Defendant"), by itself, submits this response to Plaintiff's motion for reconsideration[123] and Motion to set schedule for defendant's Motion to dismiss[117] and Motion to vacate preliminary injunction[96].

### ARGUMENT

Plaintiff moves to reconsider the Order vacating the default judgment[1] [95] issued on June 6, 2022, Plaintiff's basis is that plaintiff successfully establish personal jurisdiction over me, besides, Plaintiff said my Pro Se defense was written with the help of someone who have legal training. I believe that Plaintiff's reasons are untenable, Specifically:

The basis that the Court vacated the default judgment was Civil Rule 60(b)(1), not personal jurisdiction.

The Court ruled as follows [95]:

*Pursuant to Civil Rule 60(b)(1), the entry of default [51] and default judgment [70] [71] are vacated as to Defendant No. 121 (Womens Dresses YIISU). Defendant has good cause for the default given that it a foreign pro se litigant; it took action to vacate the default judgment within a reasonable period of time after judgment had been entered; and it has set forth a potentially meritorious defense to Plaintiff's claim.*

Indeed, I firmly believe I have set forth a meritorious defense, and didn't infringe plaintiff's trademark. Recently, I found a case in which defendant prevailed was identical with mine, see THE HEBREW UNIVERSITY OF JERUSALEM,v. DEALZEPIC(N.D. Ill. Case No. 21-5492, Dkt.64, August 1, 2022). In that case, accused product is a mousepad which contains plaintiff's "Einstein" pattern, and product title appeared term "Einstein" which were registered as trademarks by

---

[1] Although the default judgment was vacated on June 6, 2022, Amazon transferred my funds of $113,862.24 to Plaintiff under Plaintiff's previous instruction. Plaintiff admitted it received these funds on August 24,2022. I am asking Plaintiff to return these funds to my Amazon account. I hereby state this matter for court supervision.

Plaintiff. However, the Court supported defendant's fair use defense and dismissed Plaintiff's complaint. I attach hereto as Exhibit 1.



Returning to my case, Plaintiff's evidence is even weaker than that of the Plaintiff in the above case. My accused product contains the names of many rock bands, Plaintiff's pattern "DEF LEPPARD" is only a tiny part in the accused product, besides, the product title even didn't appear the terms "DEF LEPPARD". I believe that Plaintiff has no reasonable likelihood of success on the merits.



In terms of Pro Se status, Plaintiff failed to present full evidence to demonstrate my defense was written by others, in fact, all defenses were my true representations and completed by myself. Furthermore, even assuming that my defense was written by others, Plaintiff failed to demonstrate that my actions caused the Plaintiff any injustice. Besides, Plaintiff ever moved to disregard defendant's purported Pro Se status and strike defendant's reply [89]on the same ground of alleged "ghost-writing", then an AMICUS CURIAE named Lei Shufen submitted its Brief [92], the Court

finally denied Plaintiff's Motion on April 19 [93]. I do not know the amicus curiae, but I am grateful for his help.

As such, based on above, I respectfully request the court to make an order to:
1. Deny Plaintiff's Motion for reconsideration [123];
2. Set a schedule for Defendant's Motion to dismiss [117];
3. Set a schedule for Defendant's Motion to vacate preliminary injunction [96], or directly vacate preliminary injunction for plaintiff's failure to establish reasonable likelihood of success on the merits.

Dated: August 25, 2022.

**Respectfully Submitted**
/**s**/房红芳(Fang Hong Fang)
**Email:**johnseller@yeah.net;
**Address:** one city center, Donghuan 1st Road, Longhua District, Shenzhen,China.
**Phone Number:**151-3558-6336
Pro Se Litigant

# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE HEBREW UNIVERSITY OF JERUSALEM, | |
| Plaintiff, | No. 21 CV 5492 |
| v. | Judge Manish S. Shah |
| DEALZEPIC, | |
| Defendant. | |

MEMORANDUM OPINION AND ORDER

The Hebrew University of Jerusalem is the residuary beneficiary of Albert Einstein's estate. Since his death in 1955, the University has owned, developed, and protected various Einstein-related intellectual property, including copyrights and several federally registered trademarks. The University filed this suit against 140 online sellers to enforce its rights, bringing claims for trademark infringement and counterfeiting and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), as well as claims for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and for violating the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510, *et seq*. DealzEpic—the lone defendant to appear— moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted.

**I.     Legal Standards**

A complaint must contain a short and plain statement that suggests a plausible right to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–

78 (2009). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I accept all well-pleaded facts as true and draw all reasonable inferences in plaintiffs' favor. *See AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 37 F.4th 440, 443 (7th Cir. 2022). But I disregard legal conclusions and "unsupported conclusory factual allegations." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678.

## II.  Background

In 1918, Albert Einstein co-founded The Hebrew University of Jerusalem, now one of the largest universities in Israel. [7] ¶¶ 11–12.[1] After Einstein's death in 1955, the University became the residuary beneficiary of his estate, which included his personal archives, the rights to his works, publicity rights, and associated copyrights and trademarks. *Id.* ¶ 12. In the years since, the University has been actively involved in developing and protecting its rights to Einstein-related intellectual property and in the licensing of Einstein products. *Id.* ¶¶ 12–16.

To that end, the University owns several federally registered Albert Einstein trademarks. *Id.* ¶ 5. At issue here is the University's word mark "Albert Einstein"—registered with the United States Patent and Trademark Office under the registration number 3,591,305—covering various products including prints, art prints, and photographs. *Id.*; [7-1] at 3.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint, [7].

Defendant dealzEpic sold mousepads displaying prints of famous people and artwork, one of which displayed a famous portrait of Albert Einstein. [13-1] at 58.[2] DealzEpic's Amazon.com listing for the mousepad described the product as follows: "dealzEpic – Art Mousepad – Natural Rubber Mouse Pad with Classic Photo of Classic Portrait of Albert Einstein – Stitched Edges – 9.5x7.9 inches." *Id*. Beneath this primary description, the page also identified the "brand" as "dealzEpic," the "color" as "Portrait of Albert Einstein," and the "material" as "rubber." *Id*. Further down the page—in a section labeled "Technical Details"— the page listed the brand and manufacturer as dealzEpic, the "color" as "Portrait of Albert Einstein," and the "Manufacturer Part Number" as "MOUSEPAD-EINSTEIN." *Id*. Below are screenshots of dealzEpic's Amazon listing, provided by the University. *See* [13-1] at 58–59.

---

[2] The photograph, taken by O.J. Turner in 1947, is part of the public domain. [34] at 2–3; [34-1] at 2–3; *see also Albert Einstein, 1879-1955*, Library of Congress, https://www.loc.gov/item/2004671908/ (last visited Aug. 1, 2022) The University does not dispute that the portrait is in the public domain, and it does not assert any rights over the image.



The University sued dealzEpic and 139 other defendants, alleging trademark infringement and counterfeiting and false designation of origin under the Lanham Act (Counts I & II). It also sued defendants for violations of the Illinois Uniform Deceptive Trade Practices Act (Count III) and copyright infringement (Count IV). DealzEpic moves to dismiss.

### III. Analysis

#### A. Copyright

The complaint alleged that:

> Each Defendant, without the permission or consent of the Plaintiff, has sold, and continues to sell, online infringing derivative works of Plaintiff's Copyrights. Each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act.

[7] ¶ 70. Yet the University concedes that it does not seek to enforce any copyrights against dealzEpic. *See* [58] at 5. Count IV against dealzEpic is therefore dismissed with prejudice.

#### B. Trademark

Trademarks "distinguish[ ] one producer's goods or services from another's." *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2302 (2020); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) ("The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers."). The Lanham Act created a federal system for the registration of trademarks and provided trademark holders with a right of action against those who, without the holder's consent, appropriate a mark in a way that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); *Booking.com*, 140 S. Ct. at 2307; *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). The Act also provides trademark holders "a cause of action against those who make a false designation of origin for a

mark." *SportFuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019) (citing 15 U.S.C. § 1125(a)). These rights of action both aim "to protect both consumer confidence in the quality and source of goods and businesses' goodwill in their products." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 672 (7th Cir. 2001). But "[t]o prevail on either claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *SportFuel*, 932 F.3d at 595 (quoting *CAE, Inc.*, 267 F.3d at 673–74); *see also Booking.com*, 140 S. Ct. at 2307 ("[A] competitor's use does not infringe a mark unless it is likely to confuse consumers.").

The Lanham Act also "provides several affirmative defenses to a plaintiff's claims, including the 'fair use' defense." *SportFuel*, 932 F.3d at 595 (citing 15 U.S.C. § 1115(b)). A trademark-infringement defendant "may invoke the fair use defense by demonstrating that the alleged infringement 'is a use, otherwise than as a mark ... which is descriptive of and used fairly and in good faith only to describe the goods or services of such party.'" *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015) (quoting 15 U.S.C. § 1115(b)(4)). The defense allows for the descriptive use of otherwise trademarked language and "is based on the principle that no one should be able to appropriate descriptive language through trademark registration." *Quaker Oats*, 978 F.2d at 951. In *Sorenson*, the court offered the following illustrative example of the principle behind the doctrine: "The hypothetical producer of 'Crunchy' brand potato chips, for example, cannot block its competitors from describing their chips as crunchy. It may, though, be able to block its competitors from selling chips

6

that are *branded* 'Crunchy.'" *Sorensen*, 792 F.3d at 722. To succeed in its fair-use defense, dealzEpic must demonstrate that "(1) it did not use ["Albert Einstein"] as a trademark, (2) the use is descriptive of its goods, and (3) it used the mark fairly and in good faith." *SportFuel*, 932 F.3d at 595 (citations omitted).[3]

In its opening brief, dealzEpic made no argument regarding protectability or the likelihood of confusion among consumers. Instead, it assumed the validity of the trademark and relied solely on the fair-use defense. [34] at 7–9. In its reply, however, dealzEpic for the first time attacked the validity of the University's 305 trademark, arguing that "Albert Einstein" is a generic term and therefore not entitled to protection. [62] at 2–8. There are procedural and substantive problems with this argument. Procedurally, the argument is waived. It is well settled that "arguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021); *see also Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). And as dealzEpic acknowledges, a

---

[3] The University emphasizes the Ninth Circuit's distinction between "classic fair use" and "nominative fair use." *See* [58] at 11 (citing *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002)). Put simply, the former covers claims in which the defendant uses the plaintiff's mark *to describe the defendant's own product*, whereas the latter covers claims in which a defendant uses the plaintiff's mark *to describe the plaintiff's product for the purpose of comparison. See Cairns*, 292 F.3d at 1151. The distinction is irrelevant here. DealzEpic raised a fair-use defense under the Lanham Act. *See* [34] at 8–9. The Act's text corresponds with classic fair use, extending the defense to "a use, otherwise than as a mark, … of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services *of such party*." 15 U.S.C. § 1115(b)(4) (emphasis added). The nominative fair-use defense, on the other hand, represents a non-statutory doctrine that neither the Supreme Court nor the Seventh Circuit has recognized in interpreting the Lanham Act. *See Data Mgmt. Ass'n Int'l v. Enterprise Warehousing Solutions, Inc.*, No. 20 C 04711, 2020 WL 7698368, at *2 n.1 (N.D. Ill. Dec. 28, 2020); *Slep-Tone Ent. Corp. v. Coyne*, 41 F.Supp.3d 707, 717–18 (N.D. Ill. 2014).

7

mark's distinctiveness is generally a question of fact not properly resolved at the pleading stage. *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 420 (7th Cir. 2019).

On the merits, dealzEpic's genericness argument fares no better. "A generic term, in the jargon of trademark law, is a word that denotes the product rather than any of the brands of the product." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Albert Einstein does not signify any type of product. DealzEpic relies primarily on *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986 (7th Cir. 2004), which held that plaintiff had a valid trademark in the name "Niles" as applied to its toy camel. *Id.* at 992. But *Peaceable Planet* says nothing about genericness, nor does it address a trademark of the name of a widely recognized historical figure, which "do[es] not really fall into the classical 'personal name' category at all." *See* 2 *McCarthy on Trademarks & Unfair Competition* § 13:25 (5th ed.). Even if the argument had been properly presented, there would be no basis to dismiss the complaint based on genericness.

Ultimately, however, I agree with dealzEpic that its use of the term Albert Einstein constituted fair use.[4] For starters, dealzEpic did not use the Albert Einstein mark as a trademark. Not all uses of a trademarked word or phrase qualify as

---

[4] Ordinarily, a court should not grant a Rule 12(b)(6) motion—which tests the sufficiency of the complaint's claim for relief—based on the presence of an affirmative defense. *See United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Yet "when all relevant facts are presented, the court may properly dismiss a case before discovery … on the basis of an affirmative defense." *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citations omitted). Here, the University has submitted its trademark and images of the dealzEpic Amazon advertisement, and it does not dispute that I possess all the facts necessary to resolve the fair-use issue at this stage.

8

trademark use. Rather, "[w]ords or phrases function as trademarks when they are used by a source of a product to identify itself to the public as the source of its product and to create in the public consciousness an awareness of the uniqueness of the source and of its products." *SportFuel*, 932 F.3d at 596 (citations and quotation marks omitted). Courts consider multiple factors in making this determination, including whether the defendant used plaintiff's mark: (1) in tandem with its own house mark; (2) as an "attention-getting symbol" or as a catchy slogan; and (3) more or less prominently than its own mark. *See id.* at 596–98.

Each of these factors weighs in dealzEpic's favor. It identified itself at the very beginning of the listing and as the brand and manufacturer of the mousepad throughout the Amazon page. DealzEpic did not display "Albert Einstein"—which is the same font, size, and style as the rest of the words on the listing—more prominently than its own mark. Using much smaller font to identify the "color" as "Portrait of Albert Einstein" and the "Manufacturer Part Number" as "MOUSEPAD-EINSTEIN" do not suggest that these were official Einstein products, especially where those parts of the ad specifically identify dealzEpic as the brand and manufacturer. Such "non-privileged placement" of Albert Einstein within the listing did not create an attention-getting symbol, and it did not function as a source indicator. *See Sorensen*, 792 F.3d at 724.

Moreover, dealzEpic's use of "Albert Einstein" provided an accurate and good-faith description of its mousepad. "Descriptive phrases refer to a characteristic of the product." *SportFuel*, 932 F.3d at 599 (citing *Quaker Oats*, 978 F.2d at 953); *see also*

9

*Sorensen*, 792 F.3d at 724 ("A descriptive term ordinarily names a characteristic of a product or service."). Whether a term is descriptive "depends not only on the term itself, but also on the product for which it serves as a source indicator." *Sorensen*, 792 F.3d at 725; *see also Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2nd Cir. 1995)("[F]air use permits others to use a protected mark to describe aspects of their own goods, provided the use is in good faith and not as a mark.").

Here, dealzEpic's use of Albert Einstein within its Amazon listing accurately described its mousepad. In the listing, between other details about the mousepad (made of rubber, with stitched edges, and about 10 inches by 8 inches), dealzEpic communicated the most prominent characteristic of the mousepad: that it displays a portrait of Albert Einstein. The name informs consumers—if they do not already know—that the person on the mousepad is Einstein. DealzEpic use of Einstein's name was wholly descriptive, and there's nothing to suggest that its use of the mark to accurately describe the content of its product was in bad faith. *See, e.g.*, *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920–21 (6th Cir. 2003) (use of Tiger Woods's name on back of the envelope containing print and in narrative description of the print were purely descriptive, in good faith, and mentioned Woods "only to describe the content of the print.").

The University offers only a weak response. It says that "Albert Einstein" does "not describe any of the components or characteristics of the mousepad." [58] at 12. That argument is contradicted not only by the ad itself, but also by the University's other arguments. The University does not dispute that the mousepad contains a

10

photo of Einstein, and it does not argue that the mousepad (as opposed to the listing description) infringed on any of its rights. *See id.* at 14. Still, says the University, there were other ways to describe the portrait without using Einstein's name, including "'photo of famous German scientist,' 'picture of theory of relativity scientist,' 'mousepad featuring E = mc2 physicist,' etc." *Id.* at 12–13. But the University cannot prevent others from using Einstein in a descriptive sense; nor can it force others to resort to clues to identify Einstein instead of using his name. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 641 (7th Cir. 2001); *see also Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609–10 (7th Cir. 1986) (trademark holder "cannot appropriate the English language" to render others "inarticulate").

Count I against dealzEpic is dismissed. And because plaintiff relies on the same facts and "the same test as trademark infringement" for its false designation of origin and Illinois deceptive trade practices claims, *see* [58] at 15, Counts II and III are dismissed as well. *See Microsoft Corp. v. Rechanik*, 249 Fed. App'x 476, 479 (7th Cir. 2007) ("[Illinois]-law claims of consumer fraud, deceptive trade practices, and unfair competition based on trademark infringement are analyzed using the same standards as federal trademark claims." (citing *McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1173–74 (7th Cir. 1986))). Because dealzEpic established its affirmative defense, the dismissal of the claims against it is with prejudice.

### C. Attorney's Fees

DealzEpic also asks that I award attorney's fees under the Lanham Act and the Copyright Act. Under the Lanham Act, "[t]he court in exceptional cases may

11

award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). A case may be "exceptional" if the totality of the circumstances suggests that it "stands out from others with respect to [1] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [2] the unreasonable manner in which the case was litigated." *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The Copyright Act contains no exceptional-case limitation. It provides that "the court in its discretion may allow the recovery of full costs by or against any party … [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "Unlike many fee-shifting statutes, which entitle prevailing plaintiffs to recover fees as a matter of course but allow prevailing defendants to recover fees only if the suit was frivolous, § 505 treats both sides equally and allows an award in either direction." *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008). And the Seventh Circuit has "held that the prevailing party in copyright litigation is presumptively entitled to reimbursement of its attorneys' fees." *Id.*

With dealzEpic's counterclaim still pending (for now), awarding attorney's fees would be premature. A final judgment has not been entered, so while dealzEpic seems headed toward prevailing-party status, a judgment remains a necessary precondition to collect fees under both statutes. *See Alliance for Water Efficiency v. Fryer*, 892 F.3d 280, 287 (7th Cir. 2018) (to become prevailing party under § 505, "a court must enter judgment on the copyright claim"); *see also* Fed. R. Civ. P. 54. Without deciding the

12

fee issue now, I note a couple of observations on the parties' arguments. First, the Lanham Act claim was not obviously frivolous—it took resort to an affirmative defense to resolve. And the litigation has not been unreasonably vexatious—dealzEpic managed to resolve the claims early. Second, I'm not persuaded by the University's contention that I need not consider dealzEpic's arguments for attorney's fees under the Copyright Act because the University pled the claim in the alternative. The complaint alleged that "each" defendant violated its copyrights. *See, e.g.*, [7] ¶ 70. It is unclear how the complaint provided dealzEpic with any notice that plaintiff pled Count IV in the alternative. The parties should be prepared to address these concerns more fully if any fee petition is filed after a final judgment is entered.

### IV. Conclusion

DealzEpic's motion to dismiss, [34], is granted. Plaintiff's claims against dealzEpic are dismissed with prejudice. By August 15, 2022, the parties shall file a joint status report addressing whether dealzEpic intends to continue to pursue its counterclaims and if so, proposing a discovery schedule. The court will set deadlines for any petition for fees after entry of judgment.

ENTER:

Manish S. Shah
United States District Judge

Date: August 1, 2022